**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

LARRY W. BRANTLEY and
RHONDA K. BRANTLEY                                              PLAINTIFFS

        v.        Civil No. 05-5093

SCARLETT BIGGS WILSON,
LARA GABRIELLE WILSON ROSENBLUM
and MARK ROSENBLUM                                              DEFENDANTS

**O R D E R**

Now on this 22nd day of February, 2006, comes on for consideration defendants' **Motion For Summary Judgment** (document #11) and plaintiffs' **Motion For Summary Judgment On Defendants' Counterclaim Alleging Slander Of Title** (document #18), and from said motions, the responses thereto, and the supporting documentation, the Court finds and orders as follows:

1. Plaintiffs contend that they negotiated the sale of real estate owned by defendants via telephone and e-mail, in February, 2005, and that a contract was formed on the basis of provisions in the Arkansas Uniform Electronic Transactions Act, **A.C.A. §25-32-101 et seq.** Plaintiffs further allege that they prepared to perform, by obtaining a loan commitment, paying earnest money, and providing the title company information for closing. Then, they allege that the defendants refused to sell because they decided the price was not high enough.

Defendants denied these allegations, and in addition prayed

in a counterclaim for damages for slander of title.

Defendants now move for summary judgment, arguing that the parties did not intend to form a contract through their e-mails; that any agreement that was reached was too uncertain to be enforced as a contract; and that it would, in any event, violate the Statute of Frauds.

Plaintiffs dispute these arguments, and move for summary judgment on defendants' counterclaim.

2. Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States**, **31 F.3d 696 (8th Cir. 1994)**. Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp.**, **45 F.3d 262 (8th Cir. 1995)**. The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op**, **838 F.2d 268 (8th Cir. 1988)**.

3. Pursuant to **Local Rule 56.1**, the parties have filed

statements of facts which they contend are not in dispute. From those statements, the following significant undisputed facts are made to appear:

- * Scarlett Wilson and her daughter, Lara Rosenblum, own the parcel of real property at issue in this case (the "Property"). It is approximately 37 acres in size, and is located in Benton County, Arkansas.
- * In late 2004 or early 2005, Larry Brantley contacted Scarlett Wilson by telephone to determine whether the Property was for sale, and if so, at what price. Wilson informed Brantley that the Property was for sale, and was priced at $10,000 per acre, or $370,000 for the parcel.
- * After this telephone conversation, Larry Brantley and Scarlett Wilson began communicating about the Property, exclusively by e-mail, beginning on February 7, 2005. Copies of those e-mail communications are attached to defendants' Brief In Support, and their authenticity is not disputed.
- * Neither plaintiffs nor defendants were represented by a real estate agent during their communications about the Property.
- * On February 18, 2005, plaintiffs signed a real estate contract prepared by their attorney, and forwarded it to

Wilson.  None of the defendants signed this contract.

* A specific closing date for sale of the Property was not identified by the parties.
* The parties did not discuss a deposit of earnest money in connection with the sale of the Property.
* The parties did not discuss whether the Brantleys would be taking title to the Property in fee simple absolute, or whether the defendants would retain the mineral interests.
* On February 20, 2005, Wilson notified Brantley that she was not willing to sell the Property for $10,000 per acre.
* After consulting an attorney, the Brantleys filed suit for specific performance and placed a *lis pendens* against the Property on May 4, 2005.

4. Defendants first argue that the parties never entered into a contract, because certain elements essential to the formation of a contract are missing from their e-mails.

Under Arkansas law, the essential elements of a contract are competent parties, subject matter, legal consideration, mutual agreement, and mutual obligations.  There must be a "meeting of the minds on all terms, *using objective indicators*'." **Ward v. Williams**, **354 Ark. 168, 118 S.W.3d 513 (2003)**(emphasis in original).

Defendants do not question the competency of the parties, the existence of valid subject matter, the legality of consideration, or the mutuality of obligations. They do contend, however, that plaintiffs cannot raise a genuine issue of material fact as to whether the parties mutually agreed to enter into a contract for the sale of the Property. They take the position that the e-mails were merely negotiations in an attempt to reach an agreement that would be embodied in a paper document signed by both parties - a point that was never reached.

Defendants break their argument down into three segments: they contend there was no offer by Wilson; that the parties did not intend their e-mails to form a contract; and that several essential terms were neither reasonably certain nor agreed upon between the parties.

Plaintiffs rely on the content of the e-mails as evidence that there is a genuine dispute about what the parties intended. They point out that the memoranda required to satisfy the Statute of Frauds do not need to be all in one document, citing **Moore v. Exelby**, **170 Ark. 908, 281 S.W. 671 (1926)**, wherein it was said that

> a complete contract for the sale of lands, binding under the statute of frauds, may be gathered from letters between the parties relating to the subject-matter of the contract, and so connected with each other that they may be fairly said to constitute one paper relating to the contract. In order to be sufficient, the letters relied upon must by reference to each other disclose every material part of a valid contract, and must be

-5-

signed by the party sought to be charged. In other words, the letters must set out the parties, the subject-matter, the price, the description, and terms, and leave nothing to rest in parol.

Plaintiffs contend that the e-mails, taken as a whole, are objective evidence of an intent to form a contract and a meeting of the mind on all essential terms thereof.

A review of the e-mails reflects the following:

\*   In her first e-mail to Brantley dated February 7, 2005, Wilson stated that she "prefer[red] to sell the land for the stated price and not carry a loan/interest, etc.," and that Brantley should contact her if he wanted to buy it.

\*   In his response on February 8, Brantley stated that he wanted to make a formal offer, which will be "$370,000 as you stated, entire amount due at time of closing, buyer and seller splitting closing costs 50/50 and a fair amount of time allowed for me to arrange financing. Ernest money will be included with the offer." He subsequently inquired about the legal description of the land and obtained that information.

\*   On February 10, 2005, Wilson e-mailed Brantley and suggested, as to the 50/50 split of closing costs, that "it would be a good idea if you listed those with your bid, so there are no surprises."

\*   That same day, Brantley responded with estimated figures on these costs, and stated that he had "contacted my bank and discussed the purchase. They have given us a list of information

they will require and a list of steps we will need to go thru [sic] to arrange financing. There is not [sic] doubt in our minds we will be able to arrange the financing. Rhonda and I are not going to go to the work of securing financing until we have a signed offer and acceptance in hand." He noted that he was mailing an offer and acceptance with the estimated closing costs to Wilson that day.

* On February 11, Wilson noted the acreage and price, and stated her expectation that taxes would be pro-rated, and that a survey, if required, would be at the Brantleys' expense. She suggested that the Brantleys might need to adjust their offer if it did not address these two items.

* On February 14, Brantley e-mailed Wilson, stating that "Rhonda and I agree to your terms," contingent on "our obtaining financing from our local bank." He noted that his attorney was preparing an offer and acceptance.

* On February 15, Brantley updated Wilson on the preparation of the offer and acceptance, noting that he had instructed the attorney "to draw it up exactly as you stated," to which Wilson responded on February 16, "I shall be watching for the materials to arrive."

* On February 20, Wilson e-mailed Brantley that she had "decided not to sell my 37 acres on the Old Wire Road at this time for $10,000.00 per acre. Early Saturday morning I was in contact

with a longtime neighbor and he advised me not to sell at that price as other owners/locations in the immediate vicinity had sold and have been offered significantly higher prices." After reciting other information about the value of the land, Wilson concluded, "[a]t this time it does not seem appropriate for me to sell at $10,000.00 per acre."

The Court believes reasonable jurors could find this group of e-mails "so connected with each other that they may be fairly said to constitute one paper relating to the contract." They might also deduce therefrom that Wilson offered to sell - and Brantley agreed to buy - specific land for $370,000, cash price in full at closing, with closing costs to be split. They might also deduce, from Wilson's February 20 e-mail, that she later changed her mind about a previous decision to enter into a contract to sell, because she had been told she could get more money. Thus the Court concludes that there is a genuine issue of material fact as to whether objective indicators showed a meeting of the minds of Wilson and Brantley as to the sale of the Property.[1]

5. Defendants next argue that, even if a contract was formed, it is unenforceable as a matter of law under the Arkansas Statute of Frauds, **A.C.A. §4-59-101(a)(4)**, which provides that

> [u]nless the agreement, promise, or contract, or some memorandum or note thereof, upon which an action is brought is made in writing and signed by the party to be

---

[1]The question of whether any necessary elements were left out of the connected e-mails will be addressed in ¶6, infra.

> charged therewith . . . no action shall be brought to charge any . . . [p]erson upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them.

Defendants argue that Wilson's typed name on her e-mails does not constitute a signature, citing an unreported Massachusetts Land Court case, **Singer v. Adamson**, **2003 WL 23641985 (2003)**. The Court sees no need to rely on this case, which has no precedential value and was not decided on the Statute of Frauds issue, because the State of Arkansas has adopted specific legislation dealing with the matter, the Uniform Electronic Transactions Act, which contains the following relevant provisions:

* "Agreement" means the bargain of the parties in fact, as found in their language or inferred from other circumstances. **A.C.A. §25-32-101(1)**;

* "Contract" means the total legal obligation resulting from the parties' agreement as affected by this chapter and other applicable law. **A.C.A. §25-32-101(4)**;

* "Electronic signature" means an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record. **A.C.A. §25-32-101(8)**;

* The Act applies only to transactions between parties who have agreed to conduct transactions by electronic means, and whether they have so agreed is determined from the context and surrounding circumstances, including their

-9-

conduct.  **A.C.A. §25-32-105(b)**;

* A signature may not be denied legal effect solely because it is in electronic form.  **A.C.A. §25-32-107(a)**;

* A contract may not be denied legal effect solely because an electronic record was used in its formation.  **A.C.A. §25-32-107(b)**;

* If a law requires a record to be in writing, an electronic record satisfies the law.  **A.C.A. §25-32-107(c)**; and

* If a law requires a signature, an electronic signature satisfies the law.  **A.C.A. §25-32-107(d)**.

Viewing the various documents submitted by the parties in light of these statutory provisions, the Court finds that genuine issues of material fact are in dispute with regard to the Statute of Frauds, i.e., whether Wilson agreed to conduct a land sale transaction involving the Property by electronic means, and whether she intended her typed name on her e-mails to be her signature.

6.   Finally, defendants contend that certain terms, deemed by them essential to the formation of a contract for the sale of the Property, were not spelled out with sufficient certainty in the e-mails to be enforced as a contract.  They refer to the length of time that plaintiffs would have to obtain financing; whether and how much earnest money would be paid; whether mineral

-10-

interests would be transferred; what type of title insurance would be provided; the identity of the title company to issue such insurance and handle the closing; and when payment would be made. They rely on **Wyatt v. Yingling**, **213 Ark. 160, 210 S.W.2d 122 (1948)**, wherein the Arkansas Supreme Court quoted 49 Am.Jur.Sec. 354, to the effect that

> [i]t is not sufficient that the note or memorandum express the terms of a contract; it is essential that it completely evidence the contract which the parties made by giving all of the essential terms. The writing must be such that all of the contract can be collected therefrom; resort cannot be had to the terms of the oral contract to supply deficiencies in the memorandum. * * * A contract in writing which leaves some essential term thereof to be shown by parol is only a parol contract, and is, therefore, not enforceable under the statute of frauds.

Defendants also cite **Jonesboro Investment Corp. v. Cherry**, **239 Ark. 1035, 396 S.W.2d 284 (1965)**, wherein the Statute of Frauds was successfully invoked because, while the purchase price of the land was in writing, none of the terms and conditions of the sale, nor the time for payment, were set forth.

Plaintiffs respond that the essential terms are not in question, and that those terms which are undecided are not such as would prevent the formation of a contract. As noted by defendants, the time for payment is the most important of the challenged terms, and the fact that Wilson had specified she did not want to carry a note is argued by plaintiffs in support of their position that the agreement was for full payment in cash at

-11-

closing.

The matter of the contingency for obtaining financing, they assert, obligated them to use their best efforts to obtain financing and tender adequate and timely performance.

As for the failure to specify the time of closing, plaintiffs argue that a reasonable time is implied where there is no "time is of the essence" term, citing **Taylor v. George**, --- S.W.3d ---, **2005 WL 2160161 (2005)** ("where there is no provision as to the time of the performance of the contract, the law implies that it must be performed within a reasonable time").

As for whether mineral interests were to be conveyed, plaintiffs argue that it was incumbent on the sellers to so state if they intended to exclude mineral interests, and, not having done so, the whole estate was to be conveyed.

Finally, they point out that the other challenged terms, such as the identity of the title agent, the type of title insurance, whether earnest money will be paid and, if so, how much – are not required under any of the cases cited by defendants.

The Court is not persuaded by defendants' argument that the foregoing terms are so essential to performance that, not having been spelled out, they prevent a contract from coming into existence. Reasonable jurors could well agree that the payment term was cash in full at closing, and that it was implied that plaintiffs would use their best efforts to promptly obtain

financing, which, if not obtained within a reasonable time, would relieve defendants of the obligation to sell. Although **Taylor** did not involve the Statute of Frauds, the Court finds it applicable. Every party to a contract has "an implied obligation not to do anything that would prevent, hinder, or delay performance," **Cantrell-Waind & Associates, Inc. v. Guiallaume Motorsports, Inc., 62 Ark. App. 66, 968 S.W.2d 72 (1998).** Thus plaintiffs were under an obligation to promptly seek financing, and could escape their obligation to purchase on this score only by showing that they had been turned down.  This is not such a term as would leave it to the plaintiffs to seek financing if and when they got around to it, meanwhile tying up any alternative sale of the Property.

As to the interest to be conveyed, it was said anciently, but in a case which is still good law, that

> where a party agrees to convey land, and there is nothing said as to the nature and extent of the title to be conveyed, nor anything connected with the transaction going to indicate the particular species of conveyance intended, the law implies a deed in fee simple with covenants of general warranty.

**Witter v. Biscoe, 13 Ark. 422 (1853).**

The Court also agrees with plaintiffs that the other challenged terms are not such as are considered "essential terms." Thus the failure to spell them out is not fatal to plaintiffs' theory of recovery.

For all the foregoing reasons, the Court concludes that defendants' Motion For Summary Judgment should be denied.

7.  Plaintiffs, for their motion for summary judgment, allege that there are no facts from which malice could be inferred and that, because defendants have not sought to market the Property since the filing of the *lis pendens*, they cannot show damages flowing therefrom.

Malice is a question peculiarly within the province of the finder of fact, and the Court declines, at this stage of the case, to conclude that there is no genuine dispute on that score.

As for the issue of damages, defendants offer evidence which, if believed, could persuade the trier of fact that Wilson did not try to market the Property because she knew the effect of the *lis pendens*, and knew that it would be difficult - and perhaps unwise - to do so.

For these reasons, the Court will deny plaintiffs' Motion For Summary Judgment On Defendants' Counterclaim Alleging Slander Of Title.

**IT IS THEREFORE ORDERED** that defendants' **Motion For Summary Judgment** (document #11) is **denied.**

**IT IS FURTHER ORDERED** that plaintiffs' **Motion For Summary Judgment On Defendants' Counterclaim Alleging Slander Of Title** (document #18) is **denied.**

**IT IS SO ORDERED.**

      /s/ Jimm Larry Hendren
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**